UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MDM RESTAURANTS, INC., a
Michigan corporation d/b/a SILVER
CRIKET,

       Plaintiff,

                                     CASE NO. 04-CV-73877-DT
vs.                                HON. LAWRENCE P. ZATKOFF

THE CITY OF DEARBORN, a
Michigan municipal corporation,

       Defendant.

and

DEARBORN AVENUE BISTRO, INC.,
a Michigan corporation d/b/a BTs,

       Plaintiff,

                                     CASE NO. 04-CV-73900-DT
vs.                                HON. LAWRENCE P. ZATKOFF

THE CITY OF DEARBORN, a
Michigan municipal corporation,

       Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
City of Port Huron, State of Michigan,
on the 8th day of December, 2005.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant City of Dearborn's Motion for

Summary Judgment against MDM Restaurants, Inc. d/b/a Silver Criket ("Silver Criket") (Docket

No.16 in case no. 04-73877) and Defendant's Motion for Summary Judgment against Dearborn Avenue Bistro, Inc. d/b/a BTs ("BTs") (Docket No. 21 in Case No. 04-73900),[1] respectively. Each of Silver Criket and BTs has filed a response. The Defendant filed a reply brief with respect to its Motion against BTs but has not filed one with respect to the Motion against Silver Criket. The Court finds that the facts and legal arguments pertinent to the Motions for Summary Judgment are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motions for Summary Judgment against both Silver Criket and BTs are DENIED.

## II.  BACKGROUND

**A.      Liquor Licenses and Revocation Hearings**

Each of Silver Criket and BTs owns a liquor license issued by the State of Michigan Liquor Control Commission ("MLCC") in the City of Dearborn. Silver Criket has held its liquor license continuously since September 30, 1980. BTs has held its liquor license since October 30, 2002. Each of Silver Criket and BTs also holds a Topless Activity Permit issued by the MLCC in order to operate as a licensed adult entertainment establishment.

On August 10, 2004, the Defendant's City Council instructed its clerk to serve notice on each of Silver Criket and BTs of the City Council's intent to hold a hearing on September 1, 2004, to consider revocation of their liquor licenses (the "August 10 Notice"). The August 10 Notice states that the basis for the Defendant considering revocation of their liquor licenses is:

> A PATTERN OF PATRON/EMPLOYEE/STOCKHOLDER
> CONDUCT UPON OR IN THE NEIGHBORHOOD OF THE
> LICENSED ESTABLISHMENTS WHICH IS IN VIOLATION OF

---

[1]This Motion for Summary Judgment supersedes the Motion for Summary Judgment filed by the Defendant on May 25, 2005 (Docket No. 13 in case no. 04-73900), which Motion is hereby DENIED AS MOOT.

THE LAW OR DISTURBS THE PEACE, ORDER AND
TRANQUILITY OF THE NEIGHBORHOOD, TO WIT: USE,
DISTRIBUTION, SALE OF CONTROLLED SUBSTANCES;
PROMOTING PORNOGRAPHY .[2]

The notice also stated that "the license holders will be given the opportunity to present evidence and

testimony and confront adverse witnesses."

Upon receipt of the notice from Defendant in August, Silver Criket's counsel, in writing,

asked the Defendant that the Defendant (i) provide certain material to Silver Criket so that it could

prepare for the hearing, and (ii) adjourn the hearing in order to enable Silver Criket to investigate

the basis for revocation and prepare a proper defense.  Silver Criket's counsel specifically asked the

Defendant to provide:

    (a)    name, address and phone number of any and all witnesses the
               Defendant intends to call at the hearing;

    (b)    any and all documents or exhibits Defendant intends to introduce at
               the hearing;

    (c)    any reports from any person, including police officers and employees
               of Defendant;

    (d)    any exculpatory information the Defendant possesses regarding this
               matter;

    (e)    any other information Defendant possesses regarding this matter; and

    (f)    copies of any relevant ordinances and/or rules the Defendant
               proposes to rely on or use at the hearing.

Defendant informed Silver Criket that it had very limited written information it was willing to share

but scheduled a meeting with Silver Criket's counsel to lay out Defendant's case.

At the meeting, held on August 23, 2004, a police sergeant and an attorney for the Defendant

informed Silver Criket that they were seeking to revoke Silver Criket's license because one or more

persons were selling drugs at Silver Criket's business.  According to Silver Criket, Defendant relied

on a convicted drug dealer to obtain such information, Defendant refused to identify the persons

---

[2]It is unclear to the Court whether the word "PORNOGRAPHY" was intended to be
"pornography" or "prostitution."  The discussion in the parties' briefs suggest the latter.

allegedly selling drugs at Silver Criket because of the need to maintain the confidentiality of this information and many of the drug transactions took place over 2 years previously. At the meeting, Defendant also informed Silver Criket of two other reasons for revocation of the liquor license (i) allegations of "lap dancing" at the Silver Criket the Defendant had received in January 2004; and (ii) that a Don Manasian was inside the Silver Criket in contravention of a resolution passed by the Defendant's council in 1979.

A similar request for information was made by counsel for BTs and a meeting involving substantially the same content was held with counsel for BTs on August 25, 2004, at which the same police sergeant and attorney for the Defendant were present.

The September 1, 2004, hearing was adjourned until 6:00 p.m. on October 4, 2004, to consider the revocation of Silver Criket's and BTs' liquor licenses. According to Silver Criket and BTs, no other meaningful information was provided by the Defendant prior to the October 4, 2004, hearing. On October 4, 2004, the public hearing commenced at 6:00 p.m. and continued until 10:30 p.m. During that four and one-half hour period, the Defendant presented its entire case against both Silver Criket and BTs. The matter was then adjourned until October 13, 2004.

On October 13, 2004, all the Defendant's witnesses who testified at the October 4, 2004, hearing were present and available for cross-examination. The October 13, 2004, hearing consisted of seven hours of testimony. Silver Criket utilized almost the entire seven hour period for purposes of cross-examining the Defendant's witnesses and providing additional testimony and evidence (BTs cross-examined one witness on October 13, 2004). When Silver Criket asked for additional time to present testimony and evidence at the close of the October 13, 2004, hearing, an additional hearing for Silver Criket was set for October 28, 2004. On October 28, 2004, Silver Criket presented approximately five additional hours of testimony.

At the conclusion of Silver Criket's presentation of evidence, Defendant's City Council voted unanimously to recommend to the MLCC that the Class C Liquor License and the Topless Activity Permits issued to Silver Criket be revoked, as follows:

4

10-772-04    WHEREAS: Public notice has been provided that the
City Council would consider, deliberate and determine whether to
adopt a resolution to recommend to the Michigan Liquor Control that
the Class C Liquor License be revoked for the following
establishment:

Name: MDM Restaurants, Inc.
d/b/a Silver Criket

* * * * *

RESOLVED: That after due notice, appropriate public hearing and
deliberations, and having made findings of fact as indicated on the
record, it is hereby recommended to the Michigan Liquor Control
Commission that License No. Class C - 7766 -2004, . . ., in the name
of MDM Restaurants, Inc., d/b/a Silver Criket, in the City of
Dearborn, be revoked; be it further

* * * * *

On October 26, 2004, the Defendant's witnesses were available for cross-examination by

BTs.   BTs cross-examined the Defendant's witnesses and presented its own evidence for

approximately six and one-half hours.  At the conclusion of BTs' presentation of evidence, the City

Council voted unanimously to recommend to the MLCC that the Class C Liquor License and the

Topless Activity Permits issued to BTs be revoked, as follows:

10-771-04    WHEREAS: Public notice has been provided that the
City Council would consider, deliberate and determine whether to
adopt a resolution to recommend to the Michigan Liquor Control that
the Class C Liquor License be revoked for the following
establishment:

Name: Dearborn Avenue Bistro, Inc.
d/b/a BTs

* * * * *

RESOLVED: That after due notice, appropriate public hearing and
deliberations, and having made findings of fact as indicated on the
record, it is hereby recommended to the Michigan Liquor Control
Commission that License No. Class C - 116334-2004, . . ., in the
name of Dearborn Avenue Bistro, Inc., d/b/a BTs, in the City of
Dearborn, be revoked; be it further

* * * * *

**B.    City of Dearborn Liquor License Ordinance**

5

The procedure for non-renewal or revocation of a liquor license is governed by §3-29 of Chapter 3 of the Defendant's Ordinance, which states:

**Sec. 3-29. Procedure for recommendation of non-renewal or revocation.**

(a)     Before filing any objection to renewal or request for revocation of a license or permit with the state liquor control commission, the city council shall serve the licensee or permit holder by first class mail, mailed not less than seven days prior to hearing, with notice of a hearing, which shall contain the following:

        (1)     Notice of proposed action.
        (2)     Reasons for the proposed action.
        (3)     Date, time and place of hearing.
        (4)     A statement that the licensee or permit holder may present evidence and testimony and confront adverse witnesses.

(b)     Such hearing shall be open to the public, and notice of such public hearing shall be mailed by first class mail to each residence or place of business within 300 feet of the property of the licensed establishment.

(c)     Following the hearing, the city council shall submit to the license or permit holder and the state liquor control commission a written statement of its findings and determination.

Section 3-30 of the Defendant's Ordinance sets forth the criteria to be used by the Defendant in considering the revocation of a liquor license. Section 3-30 includes the following provisions:

**Sec. 3-30.  Criteria for nonrenewal or revocation.**

The city council may recommend nonrenewal or revocation of a license or permit to the state liquor control commission upon a determination by this council that, based upon a preponderance of evidence presented at the public hearing, any of the following exists:

* * * * *

(2)     Maintenance of a nuisance upon the premises, including, but not limited to, any of the following:

* * * * *

        b.     A pattern of patron conduct upon or in the neighborhood of the licensed establishment which is in violation of the law or disturbs the peace, order and tranquility of the neighborhood.

* * * * *

6

**C.      Procedural History in This Court**

On October 1, 2004, Silver Criket filed a Complaint and Motion for Temporary Restraining Order in this Court.  Silver Criket sought to enjoin the October 4, 2004, hearing described above.  This Court denied the Motion for Temporary Restraining Order and Silver Criket appealed that decision to the Sixth Circuit.  The Sixth Circuit has not rendered a decision in that matter to date.  On October 4, 2004, BTs filed a similar Complaint and Motion for Temporary Restraining Order in this district, the case was assigned to Judge Borman and no injunctive relief was granted.  The BTs case was later reassigned to this Court.  Silver Criket and BTs subsequently filed identical Amended Complaints to reflect that the hearings had taken place and that their respective due process rights had been violated, even though such hearings had been conducted.

### III.  LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met

7

its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.   ANALYSIS

In its Motions for Summary Judgment, Defendant argues that Silver Criket and BTs were provided with rudimentary due process prior to and during the hearings before the Defendant's City Council and, as such, the claims of Silver Criket and BTs fail.

**A.     Due Process**

To state a cause of action under the Fourteenth Amendment pursuant to 42 U.S.C. §1983, a plaintiff must assert that (1) the plaintiff was deprived of a right secured by the federal Constitution or the laws of the United States; (2) the deprivation was caused by a person acting under color of state law; and (3) the deprivation occurred without due process of law. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994). The parties agree that the first two elements set forth above have been satisfied. Silver Criket and BTs argue, however, that they were deprived of their property rights without due process of law, a contention the Defendant believes is not supported by applicable law.

Fourteenth Amendment due process rights consist of two components - procedural due process and substantive due process. *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). Silver Criket and BTs focused their arguments primarily on alleged deprivation of procedural due process, with only minimal allegations of the deprivation of substantive due process rights set forth in their Amended Complaints and limited arguments regarding substantive due process in their briefs. As the Defendant's Motions can be resolved solely by deciding the issue of substantive due process,

8

however, the issue of whether Defendant afforded Silver Criket and BTs adequate procedural due process is not addressed herein.

**B.      Silver Criket and BTs were Denied Substantive Due Process**

Substantive due process means "the right not to be subject to arbitrary or capricious action" by a governmental body. *Buckeye Comm. Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627, 641 (6th Cir. 2001). In Paragraph 15(s) of their respective Amended Complaints, Silver Criket and BTs alleged that:

> 15.      Through the Defendant's revocation hearing, [Silver Criket/BTs] was denied notice of the charges against it, an opportunity to respond to the charges and allegations made by the Defendant and residents, and an impartial decision-making body. The instances in which the Defendant denied [Silver Criket/BTs] its rights of due process include, but are not limited to:
>
> * * * * *
>
> **(s)      Its arbitrary and capricious action in taking away [Silver Criket's/BTs'] property and liberty interests;**
>
> * * * * *

(emphasis added). In addition, Paragraph 25 of their respective Amended Complaints provides:

> 25.      Defendant's actions constituted a deliberate denial, under color of law, of [BTs'] federal rights guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

In their response briefs, Silver Criket and BTs assert that they were denied substantive due process because Section 3-30(2)b. of the Defendant's Ordinance (hereinafter "Section 3-30(2)b.") pursuant to which the Defendant based its charges and recommended revocation of their licenses was, in essence, a strict liability provision. They argue that Section 3-30(2)b. does not require that either of them knew or even should have known that the alleged wrongful conduct occurred or that they condoned such conduct. In fact, the record reflects that the City Council President stated as much on numerous occasions at the hearings for Silver Criket and BTs that the position of the City Council was:

9

> and, again, the defense put up was that, well, the owner constantly told the people you can do these things you can't do these things, and there was plenty of evidence presented that the owner kept stressing these were not allowable activities.  You couldn't do them.  ***But they occurred and the fact they occurred was enough***.

October 26, 2004 Hearing Transcript, at 499-500 (emphasis added).[3]  *See also* October 26, 2004 Hearing Transcript, at 253 (as stated by the City Council President: "Under Kotmar the decision is that there is an absolute duty to maintain this lawful, and I've made this clear in the past, so I'm sorry you've mistaken it, the standard is that there has - - these things occur within a licensed establishment, there's an absolute duty on the part of management to make sure that they don't. And, therefore, what the manager knew or didn't know is not as relevant as what took place in the bar and what can be proved.").  *See also* October 26, 2004 Hearing Transcript, at 505 (as stated by Defendant's Corporation Counsel: "I would only remind the Council and Council President as to what the City ordinance, and I provided copies to you, provides as a basis for revocation.  Council has referenced several times the Kotmar decision.  As Council's indicated that there is no need that a license holder be involved in the contacts - - conduct, or even be aware of the conduct, but just creating a situation where the conduct is allowed to occur is enough to impact the license.").

The language of Section 3-30(2)b. and the position of the Defendant's representatives at the revocation hearings is at odds with established Sixth Circuit case law, including one case in particular. *See Lee v. City of Newport*, 1991 WL 227750, 947 F.2d 945 (6th Cir. 1991)(unpublished opinion).  The plaintiff in *City of Newport* was the owner of a strip club (the Brass Bull) at which two persons were convicted of prostitution for activity that took place at the strip club.  The municipality sought to suspend the plaintiff's occupational license (which is required to operate her business) pursuant to an ordinance that provided, in relevant part,

> (a) Any license under this division may, with notice to the holder thereof and a hearing as hereinafter provided for, be revoked or

---

[3] The foregoing statement was made at the time the City Council was preparing to vote on the revocation of BTs' licenses.

10

suspended by the Board of Commissioners.

> (1) If, within twelve months prior to the date on which charges are filed, there has been **a conviction** of any licensee or his agent, servants or employees, for any action or activity occurring in, on, or at the premises covered by the license, in violation **of any provision of this division or any other division of the City of Newport, or of any other criminal or penal statute of the Commonwealth of Kentucky against gambling, disorderly conduct, or any other criminal or penal offense**, and a judgment of conviction in any court of competent jurisdiction shall be conclusive evidence of such violation . . . .

*City of Newport*, 1991 WL 227750, at \**1 (emphasis in *City of Newport* opinion).

The *City of Newport* court addressed two constitutional problems related to the ordinance at issue. First, the court addressed the concern that the requirements of the ordinance were not rationally related to the plaintiff's fitness for the occupation:

> A licensing regulation must contain requirements that are "rationally related to an applicant's fitness for the occupation." . . . The ordinance is not limited to offenses (prostitution, solicitation, service of minors, etc.) occurring on the premises that would be reasonably related to preventing or curing the purported social evils or secondary effects at which the City is claiming to aim and rather extends to any conduct . . . regardless of whether such a violation would have any relation to the kinds of problems that the City claims it was attempting to prevent or to cure. The ordinance goes beyond the purposes of preventing or curing the secondary effects supposedly flowing from the operation of establishments like the Brass Bull and reaches conduct that, while may otherwise be prohibited by the State or its political subdivisions, would not result in or contribute to the secondary effects in the downtown area in which these establishments are located but would nevertheless permit the revocation of the plaintiff's license without achieving or furthering the City's purported goal of eliminating these secondary effects. This is clearly arbitrary or irrational.

*Id.* at \**7 (citations and footnote omitted). The court further analyzed this issue:

> Courts faced with similar provisions in State law have readily recognized that equal protection or due process guarantees are implicated when use of convictions unrelated to the government's legitimate purposes deprive a person of the right to engage in an occupation, . . . All such requirements must be tailored to promote the government's interest in regulation of the occupation, based on the nature of the crimes or offenses for which convictions may have been obtained and their relation to the fitness of the licensee to engage in that particular occupation. . . . Without both a sufficient

11

> showing by the City that the plaintiff's fitness to operate the Brass
> Bull was affected by the conviction of any of her employees for acts
> of prostitution or other relevant criminal conduct committed on the
> premises, such as that she knew or should have known about or
> condoned such conduct, and without allowing the plaintiff the
> opportunity to present evidence in defense, fairly considered by the
> decision maker, the City may not revoke or suspend the plaintiff's
> occupational license in violation of her right to due process under the
> Fourteenth Amendment.

*Id.* at **8 (citations omitted).

The court also discussed its constitutional concerns that the "ordinance permits the
revocation of occupational licenses without any showing that the operator had any control over the
conduct of employees or that the operator willfully ignored prohibited activities, or otherwise knew
of, should have known of, or condoned illegal conduct on the part of the operator's employees,
agents, or servants." *Id.* at **8 (citations omitted).

On the basis of the foregoing, the *City of Newport* court held:

> Consequently, the provisions of the ordinance now under review
> cannot pass constitutional scrutiny under the rational relation test and
> thus violate the due process clause of the Fourteenth Amendment.
> These provisions permit the City to deprive an operator of a protected
> property interest without any relation to the evils at which the
> ordinance is allegedly aimed and, having no requirement that the
> operate know or should know from the circumstances that violations
> of City ordinances or State statutes are occurring on the licensed
> premises, the ordinance precludes the licensee from showing that the
> licensee had no knowledge of any such violations.  The ordinance
> thus constitutes an improper imposition of strict liability or creates an
> irrebuttable presumption and is overbroad.

*City of Newport*, 1991 WL 227750 at **8.

The Defendant argues there are "stark differences" between the ordinance in *City of Newport*
and Section 3-30(2)b.  In particular, the Defendant notes that the *City of Newport* ordinance
permitted license revocation for **any** action or activity occurring in, on, or at the premises covered
by the licensee.  The Defendant asserts that the phrase "**A pattern of patron conduct**" in Section
3-30(2)b. satisfies any knowledge requirement (but it does not explain how or why).  As such, the
Defendant contends that the Defendant's Ordinance "does not impose strict liability on its licensees

12

and passes constitutional muster." The Court finds that the words of Section 3-30(2)b. and actions of Defendant's representatives betray the Defendant's arguments.

1.    *Strict Liability/Knowledge*

Contrary to the Defendant's assertion, a plain reading of Section 3-30(2)b. reveals that nothing in its language, including the phrase relied on by the Defendant in its Motion, includes any requirement that the licensee have <u>any</u> knowledge of the conduct that would subject a licensee to revocation of its license. In addition to the simple language of Section 3-30(2)b., the statements of the City Council President and the Defendant's Corporation Counsel at the October 26, 2004, hearing (set forth above) establish that the Defendant was enforcing Section 3-30(2)b., and making a determination of whether there was a violation of Section 3-30(2)b., without regard for whether the licensee had any knowledge of the "prohibited" conduct.

2.    *Requirements are not Rationally Related*

The Defendant argues that Section 3-30(2)b. is "rationally related to achieve a legitimate government interest," i.e., to protect the order, peace, and tranquility of the neighborhood, as stated in the Defendant's Ordinance. This argument is not consistent with the wording of Section 3-30(2)b., however, which is written in the disjunctive ("A pattern of conduct . . . which is in violation of the law <u>*or*</u> disturbs the peace, order and tranquility of the neighborhood."). As such, the language "disturbs the peace, order and tranquility of the neighborhood" is separate from, independent of, and does not modify or qualify the phrase "in violation of the law."

The Defendant next contends that as the Defendant must find that there has been a pattern of conduct established under Section 3-30(2)b. (as opposed to a single conviction under the City of Newport ordinance),[4] the instant case is distinguishable from *City of Newport*. The Court is not

---

[4]The Court also notes that Section 3-30(2)b., unlike the ordinance in *City of Newport* (or those in other cases cited by the court in *City of Newport*), does not require a **conviction** of any of the patrons with respect to the conduct that "is in violation of the law" or "disturbs the peace, order and tranquility of the neighborhood;" rather, it is only necessary that patrons engaged in a pattern of conduct that does so. Moreover, such pattern of conduct would not even require that the conduct occur at the premises of the licensee. For example, the Defendant **could** enforce

13

persuaded, however, that the "pattern of conduct" is limited to conduct or crimes which are rationally related to the purported social evils or secondary effects which the Defendant claims is so important.  As noted above, the "pattern of conduct" under Section 3-30(2)b. need only be "in violation of the law."  As such, the Court finds that the requirement under Section 3-30(2)b. is no more specific than the requirement at issue in *City of Newport*.[5]

The Court therefore concludes that Section 3-30(2)b. permits the revocation of a license for certain conduct or violations of the law, "regardless of whether such a violation would have any relation to the kinds of problems that the [Defendant] claims it was attempting to prevent or to cure." *Id.* at **7.  Further, the Court finds that Section 3-30(2)b. is not tailored, for constitutional law purposes, to the Defendant's proposed intent to protect the community.  The fact that the conduct involved in the instant case (primarily drug trafficking) is exactly the kind of criminal activity the Defendant was targeting and trying to prevent does not save Section 3-30(2)b. under a constitutional analysis. *Id.* at **7.[6]

   *3.    Conclusion*

For the reasons set forth in subsections IV.B.1. and IV.B.2. above, the Court finds that Section 3-30(2)b. "constitutes an improper imposition of strict liability or creates an irrebuttable presumption and is overbroad."  In addition, the Court holds that Section 3-30(2)b. is unconstitutional as presently written.  Accordingly, the Defendant's enforcement of Section 3-

---

Section 3-30(2)b. against a licensee who had patrons who distributed drugs elsewhere but were patrons of the licensee's establishment (*cf.* the ordinance in *City of Newport* which required that the activity that served as the basis for the conviction occur "in, on or at the premises covered by the license").

[5]  In fact, under Section 3-30(2)b., embezzlement by patrons or the use of the parking lots at Silver Criket or BTs by patrons with suspended driver licenses would be enough initiate proceedings to revoke the licenses of Silver Criket or BTs.  Without question, such conduct has nothing to do with the alleged purposes espoused by the Defendant with respect to Section 3-30(2)b.

[6]The Court notes that the *City of Newport* case also involved circumstances where the conduct relied upon by the governmental entity was relevant to the harms to the community it allegedly sought to prevent by such ordinance.

14

30(2)b. and its recommendation to the MLCC that the licenses of Silver Criket and BTs be revoked violates the due process rights of Silver Criket and BTs under the Fourteenth Amendment. The Defendant's Motions for Summary Judgment against Silver Criket and BTs are therefore DENIED.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motions for Summary Judgment against Silver Criket and BTs are DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  December 8, 2005

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 8, 2005.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

15